**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 10-20526-CIV-MORENO/BROWN**

VALEANT INTERNATIONAL (BARBADOS)
SRL,

Plaintiff,

v.

WATSON PHARMACEUTICALS, INC.,
WATSON LABORATORIES, INC.—FLORIDA,
and WATSON PHARMA, INC.

Defendants.
_______________________________________/

**WATSON'S RESPONSE IN OPPOSITION TO VALEANT'S MOTION FOR INJUNCTIVE RELIEF**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 1

II. VALEANT HAS NOT MET ITS BURDEN TO DEMONSTRATE THAT INJUNCTIVE RELIEF IS WARRANTED ........ 2

A. Valeant's Requested Injunctive Relief Is Unnecessary Given the Relief Valeant Already Received ........ 2

B. The Supreme Court's eBay Decision Mandates That a Permanent Injunction May Be Issued Only if the Plaintiff Carries Its Burden Establishing That Case-Specific Facts Warrant Entry of the Injunction ........ 5

C. Valeant Cannot Show That It Will Suffer an Irreparable Injury in This Case ........ 6

1. Watson's inability to market its bupropion hydrobromide products until Valeant's patents-in-suit expire shows that Valeant will not suffer any irreparable harm ........ 6

2. Valeant does not sufficiently support its claims of economic injury to show that it will suffer irreparable harm ........ 6

a. Valeant failed to present any case-specific marketing, sales, and customer information required by courts to make irreparable harm determinations based on claims of direct competition, lost market share, and price erosion ........ 6

b. Valeant impermissibly seeks to have this Court enter an injunction based on a presumption of irreparable harm in direct contravention of eBay ........ 10

D. Remedies at Law, Including Monetary Damages, Are Adequate to Compensate Valeant for Any Harm It May Suffer ........ 10

E. The Balance of Hardships in This Case Support Denying Valeant's Request for Injunctive Relief ........ 12

F. The Public Interest Would Be Disserved By a Permanent Injunction in This Case ........ 14

III. CONCLUSION ........ 14

## I. INTRODUCTION

Valeant has failed to present the evidence required to support an injunction in this case. This is because Valeant did not provide any evidence at trial to substantiate the claims of irreparable economic injury that it now must make to justify its requested injunction. Not only did Valeant fail to bring an economics expert to trial who could provide such evidence, it repeatedly objected to Watson's attempt to bring an economist to testify, on the theory that evidence about the bupropion market was not relevant.

Perhaps Valeant incorrectly assumed that an injunction should be awarded automatically after trial to a prevailing patentee in a Hatch-Waxman case. Perhaps Valeant (properly) realized it could not make such a showing, given that Federal law and the Court's Order of November 8, 2011 already prohibited Watson from launching its product. Or perhaps Valeant simply forgot that it would be required to make a showing under eBay. See eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006) (requiring patent plaintiffs to satisfy a four-factor test to support a request for injunctive relief).

Whatever the reason Valeant failed to adduce the necessary evidence, the Supreme Court's decision in eBay requires Valeant to make a showing for which it developed no evidence. Valeant cannot fix its mistake by substituting attorney argument for actual evidence, but that is precisely what it improperly attempts to do in its motion, filed three months after this Court's Amended Final Judgment.

Valeant's interests already are protected by the relief this Court has awarded. Watson will not be able to obtain approval to market its proposed bupropion hydrobromide products until all the patents-in-suit expire, which necessarily prevents Watson from directly competing with Valeant or usurping Valeant's market share during the patent terms. But if an injunction in this

case is granted, Watson would be exposed to the threat of contempt proceedings that may interfere with Watson engaging in legitimate regulatory efforts such as responding to FDA inquiries to produce samples or perform additional testing—activities that every other ANDA filer is authorized under a statutory safe harbor to perform.  See 35 U.S.C. § 271(e)(1).  Granting an injunction in this case would unduly place Watson at a competitive disadvantage and the threat of contempt sanctions, thereby disrupting the free enterprise system carefully crafted and protected by Congress in the Hatch-Waxman Act.

Valeant has not provided any evidence that would justify such a result, and has failed to carry its burden to establish that the heavy sanction of injunctive relief is warranted in this case.

## II.     VALEANT HAS NOT MET ITS BURDEN TO DEMONSTRATE THAT INJUNCTIVE RELIEF IS WARRANTED

### A.     Valeant's Requested Injunctive Relief Is Unnecessary Given the Relief Valeant Already Received.

Valeant is requesting unnecessary (and unsupported) injunctive relief under 35 U.S.C. §§ 271(e)(4)(B) and 283.[1]  This relief is unnecessary because Watson does not have, and by

---

[1]     The Court's February 22, 2012 Order (D.I. 188) allows further briefing only on the question of whether the Court should issue an injunction pursuant to 35 U.S.C. § 271(e)(4)(B). Valeant nonetheless requested injunctive relief pursuant to both 35 U.S.C. § 271(e)(4)(B) and 35 U.S.C. § 283. (D.I. 185.)

Although Valeant now attempts to argue that it consistently maintained its request for injunctive relief in this case under both sections, its actions have been far from consistent.  For example, in its Proposed Findings of Fact and Conclusions of Law, Valeant stated that it sought an injunction under 35 U.S.C. § 271(e) (but did not reference Section 283) and then improperly went on to state that injunctive relief was mandatory under 35 U.S.C. § 271(e)(4)(A) instead of 35 U.S.C. § 271(e)(4)(B), and then requested this relief only for a patent (the '887 patent) that was never in this case.  (D.I. 143 at 95, ¶¶ 195-96.)  Although Valeant now concedes that Section 271(e)(4)(B) applies only to patents listed in the Orange Book (D.I. 185 at 7 n.3), Valeant nonetheless submitted a proposed order issuing injunctive relief under only Section 271(e)(4)(B) (and not Section 283) before striking this proposed order and replacing it with a request for relief under both sections.  (D.I. 184, 186, 187.)

Nevertheless, given that Valeant's memorandum of law in support of its motion for a permanent injunction requests relief under both Sections 271(e)(4)(B) and 283, Watson will address both sections in this brief.

virtue of relief the Court already has awarded, cannot have, commercial bupropion hydrobromide products on the market.  This Court entered judgment that Watson's Abbreviated New Drug Applications ("ANDAs") for its bupropion hydrobromide products cannot be approved for commercial launch until Valeant's Orange Book patents[2] expire.  (D.I. 189.)  Thus, while Valeant's interests are fully protected, Watson may be prevented from engaging in legitimate regulatory efforts or responding to FDA requests because it is under an injunction and threat of contempt, as discussed below in Section II.E.  In these circumstances, Valeant's proposed injunction is unwarranted.

Another district court came to the same conclusion under strikingly similar circumstances.  In Alcon, Inc. v. Teva Pharms. USA, Inc., a prevailing Hatch-Waxman patent holder requested both mandatory Section 271(e)(4)(A) relief and discretionary injunctive relief under Section 271(e)(4)(B).  No. 06-234, 2010 WL 3081327, *1-2 (D. Del. Aug. 5, 2010).  The court granted the requested Section 271(e)(4)(A) relief, but refused to grant the patentee's request for a permanent injunction.  Id. at *3.  The court found that the patent holder's direct competition claims were irrelevant and that no irreparable harm could be established because the generic manufacturer was not able to market its proposed products under the Section 271(e)(4)(A) relief the court already awarded, which necessarily prevented the generic manufacturer "from usurping any market share or goodwill." Id. at *2.  The court further found that "any use of the patented drug . . . must be private and non-commercial and, therefore, [could not] irreparably harm [the patentee's] 'full enjoyment and protection of [its] patent rights.'"  Id.

---

[2]     U.S. Patent Nos. 7,569,610, 7,649,019, and 7,649,823 are the patents-in-suit that Valeant listed as purportedly covering its Aplenzin® product in the FDA's Orange Book: Approved Drug Products with Therapeutic Equivalence Evaluations, commonly known as the Orange Book. U.S. Patent No. 7,553,992 (the "'992 patent") is not separately listed in the Orange Book, but expires on the same day as all of the three Orange Book patents.  (D.I. 143 at 3, ¶ 19.)

Further, the court determined that the Section 271(e)(4)(A) relief awarded was adequate to compensate for the generic manufacturer's infringement of the patent-in-suit, and that the "only effect of an injunction would be to deprive the public of the benefit of [the generic manufacturer's] developmental efforts." Id. at *3. All of these findings support denying Valeant's request for injunctive relief in this case.

Valeant's argument that injunctive relief is necessary because Valeant failed to list the '992 patent in the Orange Book and could not obtain mandatory Section 271(e)(4)(A) relief on that patent ignores the fact that the '992 patent expires on the same day as Valeant's Orange Book patents-in-suit—June 27, 2026. (D.I. 143 at 3, ¶ 19.) Thus, Valeant's interests in the '992 patent already are protected for the entire term of that patent.

Valeant's interests in the patents-in-suit also are protected in the event that Watson may file different ANDAs for products Valeant asserts are covered by the patents-in-suit. If Watson were to file a new ANDA on a different product that implicates the Orange Book patents-in-suit before they expire, Watson would be required to make either a Paragraph IV certification (providing Valeant an opportunity to sue Watson, automatically triggering a stay of approval of Watson's ANDA), or a Paragraph III certification (under which the ANDA cannot be approved until the Orange Book patents expire).[3] In either event, Valeant's interests would be protected for the entire term of the patents-in-suit because Watson's ANDA could not be approved pending expiration of the patents or other litigation.

[3] Under 21 U.S.C. § 355(j)(2)(vii)(III), an ANDA filer certifies that the FDA should approve the ANDA after the date the last listed patent expires (a "Paragraph III certification"). Under 21 U.S.C. § 355(j)(2)(vii)(IV), the ANDA filer certifies that no valid claim of an Orange Book patent will be infringed by the proposed ANDA products (a "Paragraph IV certification"), which would provide Valeant an opportunity to sue to stay ANDA approval, just as Valeant initiated the above-captioned lawsuit.

In short, every argument Valeant asserts in an attempt to show why injunctive relief is necessary in this case rings hollow. The Court's Second Amended Final Judgment (D.I. 189) already protects Valeant's interests in the patents-in-suit.

**B. The Supreme Court's eBay Decision Mandates That a Permanent Injunction May Be Issued Only if the Plaintiff Carries Its Burden Establishing That Case-Specific Facts Warrant Entry of the Injunction.**

The Supreme Court's eBay decision requires that a permanent injunction may be issued in a patent case only if the plaintiff carries its burden of establishing:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay, 547 U.S. at 391.

In eBay, a unanimous Supreme Court held that the Federal Circuit erred in its categorical grant of injunctive relief upon a finding of validity and infringement in patent cases. Id. at 393. Patent plaintiffs now must identify case-specific reasons why an injunction is warranted and cannot rely on broad classifications or categorical rules to justify injunctions in patent cases without sufficient record evidence. See id.

Thus, in this case Valeant bears the burden of presenting record evidence to satisfy eBay's four-factor test. Valeant cannot shift this burden to Watson no matter how many times it tries. (See, e.g., D.I. 185 at 1 (improperly stating that Watson introduced no evidence that could justify denial of injunctive relief in this case); D.I. 178 (stating that Watson never contested injunctive relief or challenged it under eBay).) And Valeant must identify specific reasons why the evidence in this particular case warrants injunctive relief.

   **C. Valeant Cannot Show That It Will Suffer an Irreparable Injury in This Case.**

**1. Watson's inability to market its bupropion hydrobromide products until Valeant's patents-in-suit expire shows that Valeant will not suffer any irreparable harm.**

Valeant has not carried its burden to demonstrate that it will suffer any irreparable injury in this case. Under the Court's February 22, 2012 Second Amended Final Judgment (D.I. 189), Watson will not be able to market its proposed bupropion hydrobromide products prior to the expiration of Valeant's Orange Book patents, which currently are set to expire on the same day as Valeant's '992 patent—June 27, 2026. (D.I. 143 at 3, ¶ 19.) This necessarily prevents Watson from directly competing with Valeant or usurping any market share from Valeant's Aplenzin® products until Valeant's patents expire,[4] a factor which by itself is sufficient to negate irreparable injury. See Alcon, 2010 WL 3081327 at *2 (finding no irreparable harm because defendant's ANDA could not be approved until patent expiration).

**2. Valeant does not sufficiently support its claims of economic injury to show that it will suffer irreparable harm.**

a. Valeant failed to present any case-specific marketing, sales, and customer information required by courts to make irreparable harm determinations based on claims of direct competition, lost market share, and price erosion.

Even if Watson could market its bupropion hydrobromide products prior to the expiration of the patents-in-suit (which it cannot), Valeant improperly relies exclusively on broad, conclusory claims of economic injury, impermissibly attempting to substitute attorney argument for actual evidence to justify its request for injunctive relief. (D.I. 185 at 4-5, 7-8.) This is because Valeant offered no evidence at trial to show how it would suffer economic injury if an injunction was not entered. Valeant brought no economics expert to trial to testify about the

[4] Indeed, only one Orange Book patent with the same expiration date would be enough to prevent Watson from obtaining ANDA approval to market its proposed products.

bupropion market. Valeant even objected strenuously on relevance grounds to allowing Watson's economics expert, Dr. Walter Vandaele, to testify:

> Mr. Tropin: The economist is only relevant to sales.
>
> The Court: So why are you fighting so hard to exclude him?
>
> Mr. Tropin: That's a good question. Because I truly believe he's not relevant, Judge.

(Trial Tr.590:6-10; see also Trial Tr. 587:4-590:23.)

Valeant now attempts to show its economic injury after insisting on the irrelevance of markets and economics at trial. As a result, it cannot show its economic entitlement to an injunction—i.e., its supposed irreparable harm.

Further, the evidence in this case compels that any determination of irreparable harm would need to be evaluated in terms of the nature of the bupropion market as a whole, which includes both bupropion hydrobromide and bupropion hydrochloride products. Valeant's New Drug Application ("NDA") for Aplenzin® was a Section 505(b)(2) NDA, relying on data from its bupropion hydrochloride Wellbutrin XL® product to show that Aplenzin® and Wellbutrin XL® were bioequivalent. (Trial Tr. 305:19-21, 306:10-13, 307:5-15, 364:5-18; see also Defs.' Trial Ex. No. 119 at BIOVAIL-WAT023306.) Valeant's marketing partner, Ventiv, even trained its sales staff using a side-by-side labeling comparison and marketed Aplenzin® as bioequivalent to Wellbutrin® formulations, which have been available and marketed as generic drugs for many years. (Birtchet Tr. 226:12-20, 227:14-228:3, 230:9-231:12, 282:24-283:13, 287:14-288:19.)

Yet Valeant does not and cannot identify any record evidence showing how and to what extent the introduction of Watson's proposed generic bupropion hydrobromide products into a market that already includes at least 15 bupropion products would cause economic injury to Valeant in the relevant bupropion market if an injunction is not entered. Orange Book,

Bupropion Products, http://www.accessdata.fda.gov/scripts/cder/ob/docs/tempai.cfm (search under "Search by Active Ingredient" for "bupropion") (last visited Feb. 28, 2012). After the eBay decision, the Federal Circuit and district courts repeatedly have required that such evidence must be presented before an injunction may issue in cases, including in pharmaceutical cases involving generic competition. See, e.g., Abbott Labs. v. Andrx Pharms., Inc., 452 F.3d 1331, 1347-48 (Fed. Cir. 2006) (vacating district court's decision granting a preliminary injunction,[5] stating that "[W]e do not doubt that generic competition will impact Abbott's sales . . . but that alone does not establish that Abbott's harm will be irreparable."); Novartis Pharms. Corp. v. Teva Pharms. USA, Inc., No. 05-cv-1887, 2007 WL 2669338, *14 (D.N.J. Sept. 6, 2007), aff'd, 280 Fed. App'x 996 (Fed. Cir. 2008) (denying injunction based in part on finding that Plaintiffs' price erosion and loss of market share claims were merely speculative and therefore insufficient to show irreparable harm); see also Humanscale Corp. v. CompX Int'l Inc., No. 3:09-cv-86, 2010 WL 1779963, *3 (E.D. Va. Apr. 29, 2010) (denying injunction based on finding insufficient support that claims of direct competition combined with claims of loss or market share or sales without record evidence established any irreparable harm to sales); Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc., 579 F. Supp. 2d 554, 561-62 (D. Del. 2008) (denying injunction for direct competitor on basis that patent holder had not identified any specific customers it would stand to lose as a result of competitor's sales); MercExchange, L.L.C. v. eBay, Inc., 500 F. Supp. 2d 556, 569 (E.D. Va. 2007) (on remand after the Supreme Court's decision vacating the permanent injunction, denying motion for permanent injunction and finding that the potential for loss of market share alone was insufficient to establish irreparable

---

5 Although this case involved a motion for a preliminary injunction, courts are required to consider irreparable harm (and whether such harm is compensable by monetary damages) as a relevant factor when determining either preliminary or permanent injunctions, and this factor is the same for either type of injunction.

harm); Praxair, Inc. v. ATMI, Inc., 479 F. Supp. 2d 440, 443-44 (D. Del. 2007) (denying injunction based on finding that Praxair had not provided or described any specific sales or market data to assist the court, nor identified precisely what market share, revenues, and customers Praxair would lose, and therefore had not established irreparable harm); IMX, Inc. v. LendingTree, LLC, 469 F. Supp. 2d 203, 225-26 (D. Del. 2007) (denying injunction based in part on finding that plaintiff "put forward no evidence of irreparable harm . . . [such as] market or financial data[] to support its sweeping statements").

Despite this well-settled law, nowhere does Valeant identify any of the required record evidence regarding the relevant market in this case, sales data, or customers that Valeant would be subject to lose to support an injunction.  Although Valeant cites a litany of Hatch-Waxman cases and argues that the Federal Circuit has never found an injunction improper under the eBay factors (D.I. 185 at 4-5), Valeant does not cite a single Federal Circuit case for a prevailing Hatch-Waxman patentee in which, as here, the ANDA at issue had not already been approved or in which the parties appeared to argue the appropriateness of an injunction under the eBay factors on appeal.  As cases such as Abbott make clear, the Federal Circuit does not approve district courts finding irreparable harm and granting injunctions based on conclusory claims of generic competition alone or the potential for lost market share like the sweeping claims Valeant has presented here.  See Abbott, 452 F.3d at 1347-48.  Valeant's failure to offer evidence such as sales data, information regarding the relevant market, or customers that Valeant would be subject to lose to support an injunction in the particular circumstances of this case establishes that Valeant has not carried its burden.

b. Valeant impermissibly seeks to have this Court enter an injunction based on a presumption of irreparable harm in direct contravention of eBay.

If this Court were to accept Valeant's position that irreparable harm can be shown merely by claims of direct competition or claims of potential lost market share or price erosion alone, without proof of any market, financial or customer data to support these claims, it "would essentially create a presumption in favor of irreparable harm, contrary to the Supreme Court's directive in eBay." Humanscale, 2010 WL 1779963 at *3 (citation omitted); see also Abbott, 452 F.3d at 1348 ("[I]f this court were to accept a patentee's arguments that . . . its 'potential lost sales' alone demonstrate 'manifest irreparable harm,' acceptance of that position would require a finding of irreparable harm to every manufacturer/patentee, regardless of circumstances.") (citing Ill. Tool Works, Inc. v. Grip-Pak, Inc., 906 F.2d 679, 683 (Fed. Cir. 1990)); Nutrition 21 v. United States of America, 930 F.2d 867, 871 (Fed. Cir. 1991) ("[T]he district court's reliance on possible market share loss would apply in every patent case where the patentee practices the invention."); MercExchange, 500 F. Supp. 2d at 577 ("[T]he potential for loss of market share is insufficient to establish [irreparable harm]; otherwise, a scenario would never arise where an injunction did not issue.") (citation omitted)).

Watson respectfully submits that on this record, it would be clear error for this Court to grant an injunction.

**D. Remedies at Law, Including Monetary Damages, Are Adequate to Compensate Valeant for Any Harm It May Suffer.**

Valeant also fails to show how remedies at law, including monetary damages, would be inadequate to compensate Valeant for any harm it may suffer.

In the context of generic competition in the pharmaceutical industry, numerous courts have found that loss of market share or price erosion are economic harms that are calculable and

compensable by money damages. See, e.g., Eli Lilly v. Am. Cynamid, 82 F.3d 1568, 1578 (Fed. Cir. 1996); Novartis Corp. v. Teva Pharms. USA, Inc., Nos. 04-4473, 06-1130, 2007 WL 1695689, *27 (D.N.J. Jun. 11, 2007); Novartis Pharms. Corp., 2007 WL 2669338 at *14. Valeant has not provided the Court with any reasons why monetary damages would be inadequate to remedy any such harm, even if Watson could launch a product before patent expiration (of course, it cannot).

Valeant offers a strained argument that Watson's pretrial stipulation states that money damages were not at issue in this case shows that monetary damages would be inadequate. (D.I. 185 at 8.) This argument makes no sense. Under the Hatch-Waxman statutory framework, submission of an ANDA on a patented drug is considered an artificial act of an infringement which cannot serve as the basis for damage claims, and is only entitled to relief pursuant to 35 U.S.C. § 271(e)(4). This has no bearing on whether Valeant's claims of potential loss of market share or price erosion upon Watson's ANDA approval (the only way Valeant's irreparable harm claims could come into play) could be compensable by money damages.

Given that Watson was and is foreclosed from marketing its proposed bupropion hydrobromide ANDA products until such time as the FDA ultimately approves Watson's ANDAs, which will necessarily be after Valeant's Orange Book patents expire,[6] Valeant has not established how any remedy at law would be inadequate to protect Valeant's interest in the patents-in-suit. The remedy the Court entered awarding Section 271(e)(4)(A) relief preventing approval already protects Valeant's interests. But even if Watson could launch its products, Valeant has not established why a loss of market share or potential price erosion would not be compensable by monetary damages.

---

6 As discussed above (see Section II.A.), Valeant's '992 patent is set to expire the same day as Valeant's Orange Book patents.

Moreover, Valeant notes that Watson has an extensive product line and manufactures 891 different drugs. (D.I. 185 at 9 (citing Pl.'s Trial Ex. 95, ¶ 93, Defs.' Trial Ex. 451).) There is no question (and Valeant has not disputed) that Watson would have adequate assets to satisfy any monetary judgment this Court may award.

**E. The Balance of Hardships in This Case Support Denying Valeant's Request for Injunctive Relief.**

Watson would suffer substantial hardship and be at a competitive disadvantage relative to other generic manufacturers if an injunction is entered in this case.

Under the Hatch-Waxman statutory framework, ANDA filers are encouraged to file Paragraph IV certifications challenging weak patents to make low-cost generic drugs available to the public sooner. S. Rep. No. 107-167, at 4 (2002) ("Under Hatch-Waxman, manufacturers of generic drugs are encouraged to challenge weak or invalid patents on brand name drugs so consumers can enjoy lower prices.").

But other ANDA filers who choose not to risk the expense of litigation are allowed to file a Paragraph III certification, which voluntarily delays FDA approval until patent expiration, thereby avoiding any threat of suit. 21 U.S.C. § 355(j)(2)(vii)(III). Valeant cannot sue these applicants on any patents—including the non-Orange Book listed '992 patent—until the ANDAs are approved and the Paragraph III filers are allowed to market their products. See 35 U.S.C. § 271(e)(1). Thus, if an injunction were entered in this case, Watson would be subjected to the threat of potential contempt proceedings to which no Paragraph III filer would be subjected—simply by virtue of filing a Paragraph IV certification on the Orange Book patents. Incredibly, the trigger for these contempt proceedings would be the '992 patent, a patent that Valeant strategically decided not to list in the FDA Orange Book. That result would turn the policy

rationales undergirding the Hatch-Waxman Act on their heads, punishing Watson for challenging an Orange Book patent and rewarding Valeant for failing to list its patent in the Orange Book.[7]

Further, Valeant may argue as the basis of a future contempt proceeding that Watson's regulatory efforts, such as responding to FDA inquiries to manufacture samples or perform additional tests, should be enjoined. Thus, Watson would be exposed to the threat of contempt proceedings for responding to FDA inquiries—activities which are fully available to all other ANDA applicants regardless of the certification they filed—simply because Watson is subject to an injunction.

Valeant's requested injunctive relief could thereby have the practical effect of broadening Valeant's exclusionary rights against Watson for activities that Valeant cannot exclude other ANDA filers from enjoying, placing Watson at a competitive disadvantage and disrupting the free enterprise system simply because Watson did what it was encouraged to do under the Hatch-Waxman Act. An injunction would therefore place a substantial burden on Watson.

Valeant, on the other hand, maintains that the only hardships it may suffer are direct competition, potential loss of market share, or potential price erosion. (D.I. 185 at 6, 9.) As discussed above (see Section II.A.), these concerns are not relevant in this context because Watson has not and cannot market its proposed ANDA products until Valeant's Orange Book patents-in-suit expire. (D.I. 189.) But even if Watson's products were on the market, Valeant has not demonstrated that it could suffer any irreparable harm that would not be compensable by monetary damages. See Sections II.C.-D. above.

---

[7] And Valeant would be unjustly rewarded for failing to list its '992 patent in the Orange Book, taking advantage of the Hatch-Waxman Act by being able to file an infringement suit against Watson on this patent before Watson's products were marketed without providing notice to Watson that this patent purportedly covered Valeant's Aplenzin® products.

Thus, while Valeant has identified no hardship that would warrant its proposed injunction, the hardship to Watson is manifest. Accordingly, the balance of the hardships weighs against Valeant's proposed injunction.

**F. The Public Interest Would Be Disserved By a Permanent Injunction in This Case.**

But for Valeant's proposed injunction, Watson will be able to undertake the same legitimate regulatory activities enjoyed by every other ANDA filer prior to the expiration of Valeant's patents. Thus, the effect of Valeant's proposed injunction "would be to deprive the public of the benefit of [Watson's] developmental efforts" prior to ANDA approval. Alcon, 2010 WL 3081327 at *6. Moreover, as further discussed in the previous section, issuing an injunction in this case would discourage ANDA filers from filing Paragraph IV certifications, in contravention of public policies that undergird the Hatch-Waxman Act and the free enterprise system.

Valeant, on the other hand, cannot show that the public interest will be disserved if a permanent injunction is not entered. Valeant's argument that there is a strong public interest in protecting Valeant's patent rights and its pharmaceutical research is irrelevant in this case, because Valeant's patent rights already are protected for the terms of the patents-in-suit. See Section II.A. above.

Given the negative effects on the public interest that would be caused by an injunction in this case, the balance of equities weighs against Valeant's proposed injunction.

## III. CONCLUSION

For the foregoing reasons, Watson respectfully requests that the Court deny Valeant's Motion for a Permanent Injunction.

Respectfully submitted,

s/Janet T. Munn
Janet T. Munn
Email: jmunn@rascoklock.com
Florida Bar No. 501281
Rasco Klock
283 Catalonia Avenue, Suite 200
Coral Gables, FL  33134
Telephone: 305.476.7101
Facsimile: 305.476.7102

AND

John L. North, Esq.
(*admitted pro hac vice*)
Email:  jnorth@kasowitz.com
Jeffrey J. Toney, Esq.
(*admitted pro hac vice*)
Email:  jtoney@kasowitz.com
Darcy L. Jones, Esq.
(*admitted pro hac vice*)
Email:  djones@kasowitz.com
Meghan M. Rachford, Esq.
(*admitted pro hac vice*)
Email:  mrachford@kasowitz.com
Kasowitz, Benson, Torres & Friedman LLP
Two Midtown Plaza, Suite 1500
1349 West Peachtree Street, N.W.
Atlanta, GA  30309
Telephone:  404.260.6080
Facsimile: 404.260.6081

Norman E.B. Minnear, Esq.
Email:  jminnear@kasowitz.com
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, NY  10019
Telephone:  212.506.1742
Facsimile:  212.500.3563

*Attorneys for Defendants Watson Pharmaceuticals, Inc.; Watson Laboratories, Inc. – Florida and Watson Pharma, Inc.*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of February, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the attached service list in the manner specified, either via transmission of notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: s/Janet T. Munn
Janet T. Munn

SERVICE LIST

Harley S. Tropin, Esq.
Email: hst@kttlaw.com
Gail A. McQuilkin, Esq.
Email: gam@kttlaw.com
Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon Boulevard, 9th Floor
Coral Gables, FL 33134
Telephone: 305.372.1800
Facsimile: 305.372.3508

Theresa M. Gillis, Esq.
Email: tgillis@mayerbrown.com
Mayer Brown LLP
1675 Broadway
New York, NY 10019
Telephone: 212.506.2553
Facsimile: 212.262.1910

Thomas W. Jenkins, Jr., Esq.
Email: tjenkins@mayerbrown.com
Mayer Brown LLP
71 S. Wacker Drive
Chicago, IL 60606
Telephone: 312.701.7104
Facsimile: 312.701.7711